IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

John Thomas Robinson, #256452          )
                                        )
                        Petitioner,      )        Civil Action No.8:08-1788-RBH-BHH
                                        )
            v.                          )
                                        )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
Robert Mauney, Warden                   )
of Livesay Correctional                 )
Institution,                            )
                                        )
                        Respondent.      )
_____)

        The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254.  This matter is before the Court on the respondent's motion for summary

judgment (Dkt. Entry # 12) and the petitioner's motions for summary judgment (Dkt. Entry

# 16) and for an immediate trial on the issues (Dkt. Entry # 18).

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The petitioner brought this habeas action on May 2, 2008.[1]  On July 7, 2008, the

respondent moved for summary judgment.  By order filed July 8, 2008, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

adequately respond to the motion.  On August 1, 2008, the petitioner filed a response

opposing the respondent's summary judgment motion and his own motion for summary

judgment.

---

        [1]There appears to be a prison mailroom stamp reflecting that on May 2, 2008, the prison officials received the envelope containing the petition.  *Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to prison officials for forwarding to court).  (Pet. Attach. 18.)

## **PROCEDURAL HISTORY AND FACTS**[2]

The petitioner is a state prisoner currently incarcerated in the Tyger River Correctional Institution.[3]  The petitioner was indicted in the December 17, 1998  term of the York County Court of General Sessions for one count of possession of crack cocaine with intent to distribute and one count of possession of crack cocaine with intent to distribute within close proximity of a public park.  At trial, the petitioner was represented by Public Defender Michael R. Hitchcock.  On February 8-9 1999, the petitioner was convicted by a jury on both charges.  The Honorable John C. Hayes, III, sentenced him to twenty years and imposed a $25,000 fine for the possession of crack cocaine with intent to distribute charge, and fifteen years for the possession of crack cocaine with intent to distribute within close proximity of a public park to run concurrently.

On October 13, 1998, the petitioner was arrested in Rock Hill, South Carolina. At trial, two members of the Special Projects Unit of the City of Rock Hill Police Department testified for the State. They stated that they were conducting surveillance of an auto body shop for illegal drug activity on October 13, 1998.  (App. 32, 74.)  The two officers were on bike patrol.  (App. 32, 75.)  At approximately 8 p.m., they observed a vehicle stop in front of the shop under surveillance.  (App. 34, 74.)  The petitioner hopped out of the vehicle and entered the shop through a bay door.  (App. 34, 74.)   He was out of view for a short while. Approximately five minutes later, the petitioner came back into view at the bay door. (App. 35-36, 74.)  He was engaged in a verbal argument with someone inside the shop.  (App. 36, 74-75.)  He left shortly thereafter.  (App. 37, 75.)  The officers followed the petitioner

---

[2]The parties appear to agree on the procedural history and facts as they are almost identical in their memoranda.  (Resp't's Mem. Supp. Summ. J. ; Pet'r's Mem. Supp. Summ. J. )

[3]When the petitioner filed this habeas petition, he was incarcerated in the Livesay Correctional Institution. (Pet.)

down the street. (App. 37, 75-76.) They asked him to stop and to answer some questions. (App. 38, 75-76.) According to both officers, the petitioner then ran at one of the officers. (App. 38, 76.)

Both officers stated that they observed a black plastic object fly from one of his hands. (App. 39, 76.) "He threw his body into mine, and as he was doing that, I was watching his hands. And at that time I saw a piece of black, a black plastic-looking object, come out of his left hand." (App. 39.) The officer with whom the petitioner collided took the petitioner down and detained him. (App. 39, 76.) The other officer recovered the black plastic object. (App. 39, 76.) In the object, he found seven rocks of crack cocaine. (App. 78.) According to the police department's chemist, the seven rocks amounted to nine tenths (0.9) grams of crack cocaine. (App. 89.) At the close of the State's case, the petitioner's trial counsel moved for a directed verdict on the possession with intent to distribute charge. (App. 93.) He asserted that the State failed to present evidence that the petitioner had the intent to distribute crack cocaine. (App. 93-95.) This motion was denied. App. 96.)

The petitioner also testified at trial. He asserted that he was not the person the police saw at the auto body shop. He claimed he was in the area because he was running an errand for his mother. He stated that he had stopped by a convenience store to pick up cigarettes. (App. 105-106.) He had just left the convenience store and was walking to a local grocery store to pick up some fatback bacon for his mother. (App. 106, 110.) He claimed the police searched him and found nothing. (App. 113.) The petitioner became angry and admits he cursed at the police. (App. 113.)

During cross examination, the solicitor asked the petitioner about several prior conviction, including one for disorderly conduct. (App. 130.) The petitioner's counsel objected on the ground that this conviction could not be used for the purposes of

3

impeachment. (App. 130, 131.)  The petitioner's counsel requested a curative instruction be given, but did not request a mistrial.  (App. 131.)  In doing so, he specifically stated that in light of the other offenses that were already admitted, the reference regarding the disorderly conduct conviction did not rise to the level of requiring a mistrial.  (App. 131.)  The trial court granted the request for a curative instruction and gave one in his instructions. (App. 132; 169.)

On February 10, 1999, the petitioner filed a timely notice of appeal. On appeal, the petitioner was represented by Appellate Defender Wanda H. Haile.  Haile filed an *Anders* brief and the petitioner filed a pro se response to the *Anders* brief.  (Resp't's Return Attach. 2 and 3.)  On June 28, 2000, the South Carolina Court of Appeals denied the petitioner counsel's motion to be relieved and  directed counsel for both parties to fully brief whether the trial court erred in denying the petitioner's motion for a directed verdict of acquittal regarding the greater offense, possession with intent to distribute, when the overall weight was less than one gram. (*Id.* Attach. 4.)  On January 22, 2001, the South Carolina Court of Appeals affirmed the petitioner's conviction.  (*Id.* Attach. 7.)  The petitioner filed a petition for rehearing on February 6, 2001, which was denied on March 6, 2001.  (*Id.* Attach. 8.) The remittitur was sent down on April 10, 2001.  (*Id.* Attach. 9.)

The petitioner then filed an application for post-conviction Relief ("PCR") on January 31, 2001, raising the following grounds for relief:

> (A) ineffective assistance of counsel;

> (B) fraud on court; and

> (C) excessive sentence.

(App. 188-89.)  On March 22, 2005, the petitioner amended his application for PCR by adding the following additional grounds for relief:

> (D) results of prior conviction still persists even

4

> though sentenced has been served in full;
>
> (E) trial court abused his discretion treating drug
> quantity as one gram for sentencing purposes;
>
> (F) erroneous jury charge by the court on PWID –
> plain error; and
>
> (G) unlawfully revocation of probation.

(App. 194-95.)  On July 31, 2006, an evidentiary hearing was held before the Honorable Lee S. Alford.  (App. 202.)  The petitioner was present at the hearing and was represented by attorney Matthew Niemiec.  *(Id.)*   On October 14, 2006, Judge Alford denied and dismissed with prejudice the petitioner's application for PCR.  (App. 243-252.)

On December 19, 2006, the petitioner filed a petition for an extension of time to file an appeal of the denial of PCR.  (Resp't's Return Attach. 11.)  On December 29, 2006, the South Carolina Supreme Court denied the petitioner's request for an extension, without prejudice to any right the petitioner had to seek relief under *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), if the time to serve the notice of appeal expired.  (*Id*.  Attach. 12.)  The petitioner filed an *Austin* petition and a petition for a writ of certiorari, both pro se, in January 2007.  (*Id*.  Attach. 13.)  On January 24, 2007, the South Carolina Supreme Court requested that the petitioner's counsel, Matthew Niemiec, verify the date he received the PCR Court's Order in an effort to determine the timeliness of the petitioner's notice of appeal.  (*Id*. Attach. 14.)  On February 4, 2007, Niemiec responded that he did not receive a copy of the order, but he obtained a copy shortly thereafter.  (*Id*. Attach. 15.)  In a letter dated February 23, 2007, the petitioner was informed by the Clerk of the South Carolina Supreme Court that his notice of appeal was timely and that he may be appointed new counsel for the appeal.  (*Id*. Attach. 16.)

On appeal, the petitioner was represented by Assistant Appellate Defender LaNelle C. DuRant.  The petitioner's counsel initially perfected appeal with a petition for a writ of

certiorari on June 25, 2007. On July 16, 1007, the petitioner's appellate counsel moved to file an amended petition and on August 9, 2007, the South Carolina Supreme Court granted the petitioner's motion. (Resp't's' Return Attachs. 18 and 19.) The petition for writ of certiorari was amended and resubmitted as a *Johnson* petition for a writ of certiorari on August 20, 2007, raising the following two issues:

> 1) The PCR Court erred in not finding ineffective assistance of counsel because trial counsel failed to object to the sufficiency of the curative instruction given as a result of the State's asking the petitioner about the inadmissible disorderly conduct conviction; and
>
> 2) The PCR Court erred in failing to find trial counsel ineffective for not requesting a mistrial based on the same actions by the State.

(*Id.* Attach. 20.) On August 28, 2007, the petitioner filed a pro se response to the *Johnson* petition raising seven additional issues:

> 1) [Whether] Post-Conviction relief judge found the Applicant's right to appellate review was not knowingly and intelligently waived;
>
> 2) [Whether] defense counsel's failure to motion for mistrial when the State inadvertently disclosed applicant's prior disorderly conduct conviction during impeachment founded prejudicial error;
>
> 3) [Whether] defense attorney ineffective when failed to object to trial court's erroneous jury instructions for PWID (possession with intent to distribute) within close proximity of a public park;
>
> 4) [Whether] defense attorney ineffective for not motioning for direct verdict of acquittal for the separate criminal offense - possession with intent to distribute within close proximity of a public park;
>
> 5) [Whether] trial counsel ineffective when failed to motion for change of CDR CODE 112;
>
> 6) [Whether] unlawfully revocation of probation; and
>
> 7) [Whether] ineffective assistance of counsel.

(*Id.* Attach. 21.)

6

On February 21, 2008, the South Carolina Supreme Court denied the petitioner's petition for a writ of certiorari and granted counsel's request to withdraw. (Resp't's Return Attach. 23.)  The petitioner filed a pro se petition for rehearing in March 2008.  (*Id*. Attach. 24.) In this petition, the petitioner asserted the indictment for possession of crack cocaine with intent to distribute was defected by CDR Code 112 and that he received ineffective assistance of counsel.  (*Id*.)  On March 19, 2008, the  South Carolina Supreme Court denied the petition for rehearing.  (*Id*. Attach. 25.)  The remittitur was sent down on March 19, 2008. (*Id*. Attach. 26.)

On August 22, 2006, the petitioner filed a second application for PCR raising the following grounds for relief:

> 1. Applicant asserts the jury did not render a verdict of "guilty" and that the guilty verdict in this case is through the entry of bogus documents forged by the court itself. The true verdict forms have been destroyed or made secret, the sentencing sheets are counterfeit. The court attempted to bribe the jury fore-person into signing a duplicate verdict form. Polling the jury would be clear and convincing evidence of "fraud on the court."

> 2. Trial counsel's representation was so deficient for attorney of a criminal case, and had it not been for his deficiency, it is unambiguous that the outcome of this case would have been different.

(Pet. 4; Dkt. # 11; Resp't's Ret. Attach. #26 at 3.)   The petitioner's second application for PCR is still pending.[4]

On May 2, 2008, the petitioner filed this habeas action raising the following grounds for relief:

> **Ground One:** [Whether] Defense Counsel Failed to Motion for Mistrial is Prejudicial Error? Petitioner believes "Yes"
> **Supporting Facts:** Petitioner testified on his behalf during his circuit court trial. The State disclosed his prior disorderly conduct conviction during impeachment and trial attorney

---

[4]The  PCR  action  remains  pending  as  of  the  date  of  this  report. (www.judicial.yorkcountygov.com/scjdpublicindex.)

objected but did not pursue a mistrial. Petitioner believes that this deficiency fund prejudicial error and that he should be entitled to relief by this District Court. The Record reflects that this was not an issue for impeachment and that it was disclosed by the attorney inadvertently, and trial counsel should have motioned for mistrial.

**Ground Two:** [Whether] Ineffective Assistance of Counsel? Petitioner Believes "Yes"
**Supporting Facts:** Because trial attorney failed to motion for a mistrial respectively of Ground One above, he was deficient and his failure has prejudice [sic] this case. I believe that the court would have granted the mistrial and the outcome of this case would have [sic] different. It was his obligatory duty to motion for a mistrial and any motion less than a motion for mistrial at this stage of the trial would clearly support ineffective assistance of counsel during a criminal trial proceeding.

**Ground Three:** [Whether] the indictment for possession of crack cocaine w/intent to distribute, defected by CDR Code 112? Petitioner believes "yes"
**Supporting Facts:** The indictment for possession of crack cocaine with intent to distribute bears on its face CDR Code 112; however, the quantity of crack cocaine presented into evidence was less than one gram. CDR Code 112 is relevant only when the quantity of drug is a gram or more. Hence, CDR Code 112 is prejudicial for sentencing following a conviction wherefrom the quantity of ice, crank, or crack cocaine is less than one gram.

(Pet. 6-9.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations,

a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### Habeas Standard of Review

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

10

>(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>>(A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>>(B) (I) there is either an absence of available State corrective process; or
>>
>>(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
>(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
>(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines

11

govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

12

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such

claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

Initially, the undersigned notes that it appears that the petitioner has a pending application for PCR in state court. (Res'p't's Mem. Supp. Summ. J. at 17.) This second PCR was filed on August 22, 2006. The respondent believes that this PCR application will be dismissed with prejudice because it is both successive and untimely. (*Id.*) The respondent contends that all the claims in this habeas petition are properly exhausted and has addressed the grounds presented on the merits. (*Id.*) The undersigned agrees.

In *Rhines v. Weber,* 544 U.S. 269 (2005), the United States Supreme Court addressed how "mixed" petitions containing both exhausted and unexhausted claims should be handled by district courts. The Court in *Rhines* noted the interplay between the one-year statute of limitations in the AEDPA, 28 U.S.C. § 2244(d)(1), and the requirement of *Rose v. Lundy*, 455 U.S. 509 (1982), that court's are to dismiss the entire mixed habeas petition without prejudice in order to effectuate the requirement of "total exhaustion." *Rhines*, 544

14

U.S. at 274-75.  In such cases, petitioners who come to federal court with a  mixed  petition "run the risk of forever losing their opportunity for any federal review [of their claims]" if the district court dismisses the case without prejudice close to or after the limitations period has expired." *Id.*  In *Rhines*, the Court noted that some district courts have adopted a stay and abeyance procedure to deal with this problem: the court stays the petition and holds it in abeyance while the petitioner returns to state court with his unexhausted claims. *Id*. at 275-76.

Here, however, the petition is not a mixed petition of exhausted and unexhausted claims like in *Rose v. Lundy* and *Rhines*.  All of the petitioner's claims raised in this habeas petition have been exhausted including the issues he raised in his pending PCR application. Although there may be a remote possibility that the state PCR court will review the claims on the merits in the petitioner's pending successive PCR application, even if the PCR court ultimately reviews the claims on the merits, any ruling of the District Court that the claims raised in this habeas petition are without merit would not preclude the state PCR court from reaching a contrary conclusion and granting relief.  *See Ivey v. Catoe,* 36 Fed.Appx. 718 (4th Cir. 2002).

**Grounds One and Two**

In Grounds One and Two, the petitioner contends that trial counsel was ineffective for failing to move for a mistrial after the solicitor improperly introduced the petitioner's prior disorderly conduct conviction at trial.  The petitioner claims that trial counsel should have moved for a mistrial which he alleges would have been granted.

The PCR Court found trial counsel was not ineffective. The PCR Court noted that trial counsel requested a curative instruction after the solicitor referred to the inadmissible disorderly conduct conviction.  (App. 249.)  The PCR Court then held that trail counsel's request for a curative instruction was appropriate under the circumstances and the

admission of the disorderly conduct conviction was not highly prejudicial in light of the other offenses which were properly referred to be the Solicitor.  (*Id.*)  The PCR Court stated that it was not likely that the trial court would have granted a mistrial in such a situation.  (*Id.*)  The PCR Court concluded that trial counsel was not ineffective for failing to move for a mistrial. (App. 249.)  The respondent contends the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law and it was not based upon an unreasonable determination of facts in light of the state court record.    The undersigned agrees.

At trial, the State cross-examined the petitioner on several prior convictions, including forgery, criminal conspiracy, and shoplifting.  Trial counsel objected when the State asked the petitioner about his prior disorderly conduct conviction.  (App. 130.)[5]   The trial court agreed that the disorderly conviction was not admissible for impeachment purposes and asked trial counsel what relief he sought.  (*Id.*)  Trial counsel stated that because of the other properly admitted convictions which the prosecutor had cross-examined the petitioner on, he did not think that the references to the disorderly conduct rose to the level of a mistrial.  Therefore,  he requested an instruction that the jury disregard it.  (App. 131.)  Likewise, at the PCR hearing, trial counsel testified that considering the nature of the other convictions raised by the State prior to the inadmissible one, he did not think he had grounds for a mistrial.  (App. 226.)  He testified that he believed that a curative instruction was sufficient.  *(Id.)*

---

[5]Prior to trial, the State and the petitioner's trial counsel had determined that several of the petitioner's convictions were not admissible for impeachment purposes: assault and battery, hindering police, trespassing, and possession of crack cocaine.  (App. 5-8; 131.) However, the disorderly conduct conviction was not addressed because the trial court stated it was obviously not admissible for impeachment purposes.  (App. 131.)

As noted above, the PCR Court found that the reference to the disorderly conduct conviction was not highly prejudicial in light of the other convictions that were allowable. The PCR Court also found it unlikely that the trial court would have granted a mistrial in that situation.  The PCR Court found that trial counsel's request for a curative instruction, rather than a mistrial, to be appropriate. (App. 249.)   The PCR concluded trial counsel was not ineffective.

The PCR Court's  determination that trial counsel's performance  was not deficient was not unreasonable.  "Where . . . counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel."  *Stokes v. State*, 419 S.E.2d 778 (S.C. 1992).   Further, South Carolina courts have specifically recognized that trial counsel is not ineffective for choosing to request a curative instruction rather than moving for a mistrial.  *Green v. State,* S.E.2d 318, 323 (S.C. 2002).

The petitioner has also failed to show that he was prejudiced by trial counsel's decision to seek a curative instruction rather than move for a mistrial.  As noted earlier, trial counsel testified at the PCR hearing that he did not seek a mistrial because he did not believe there were sufficient grounds for one, especially in light of the other convictions which were properly admitted.  (App. 226.)   Further, a curative jury instruction is deemed to correct an error regarding improper testimony unless there is an objection to the sufficiency of the instruction. *State v. White,* 639 S.E.2d 160, 163 (S.C. Ct. App. 2006). The petitioner does not contend the curative instruction was insufficient or that trial counsel should have objected to the curative instruction because it was insufficient. Thus, the petitioner has failed to show that trial counsel's decision to request a curative instruction rather that move for a mistrial has resulted in any prejudice.

Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Furthermore, it was not based upon an

17

unreasonable determination of facts in light of the state court record.  Accordingly, this issue

is without merit and, therefore, Grounds One and Two should be summarily dismissed.

**Grounds Three**

In Ground Three, the petitioner alleges that his indictment for possession of crack

cocaine with intent to distribute was defective because it referred to an incorrect CDR code.

The respondent contends this claim should be summarily dismissed because it fails to state

a claim upon which relief can be granted. Further, the respondent contends the PCR Court

did not make an unreasonable factual determination or unreasonably apply federal law as

tot his issue.  The undersigned agrees.

In his first PCR proceeding, the petitioner asserted the indictment for his possession

of crack cocaine with intent to distribute charge was defective because it referred to an

incorrect CDR code which caused the trial court to apply the wrong statute in his sentencing.

The PCR Court found no ineffective assistance of trial counsel or subject matter jurisdiction

problem in regard to the CDR code.  (App. 251.)  Citing to the South Carolina Judicial

Department's website, the PCR Court determined that the CDR code is for administrative

purposes only and is not jurisdictional and thus any error in the CDR code would not deprive

a court of subject matter jurisdiction. (*Id*.)[6]

---

[6]The South Carolina Judicial Department sets forth the purpose of CDR codes:

> CDR Codes are four digit numerical codes which represent
> criminal offenses created by the South Carolina General
> Assembly and the common law. The actual criminal offenses
> are found in the Code of Laws of South Carolina and common
> law developed in court opinions. The elements of a crime, its
> penalties and other related matters are governed by the Code
> of Laws and the common law alone.
>
> CDR codes are merely administrative "shortcuts" to actual law.
> They were created at the time when automated (computerized)
> systems had very limited memory, and did not have the
> capacity to maintain references to specific statutes which could

First, the undersigned notes that "[v]ariances and deficiencies in state indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985).  Even assuming an error in the CDR code, the petitioner has not shown that such a deficiency made his trial egregiously unfair amounting to a deprivation of his due process rights.  The petitioner was charged and convicted of possession of crack cocaine with intent to distribute under § 44-53-375(B).

The petitioner appears to be arguing that he could be convicted of only possession of crack cocaine under S.C. Code Ann. § 44-53-375(A), rather than possession with intent to distribute under § 44-53-375(B), because he was arrested with less than one gram of crack cocaine.  The petitioner raised this issue on direct appeal and the South Carolina Court of Appeals interpreted the applicable South Carolina statutes and held:

> S.C. Code Ann. § 44-53-375(B) (Supp.1999) creates a permissive inference that possession of more than one gram of crack cocaine constitutes possession with intent to distribute. However, a conviction of possession with intent to distribute does not hinge upon the amount involved. *State v. Adams*, 291 S.C. 132, 352 S.E.2d 483 (1987); *State v. Simpson,* 275 S.C.

---

> contain many digits. For example, a statute could be represented by SC Code of Laws Section 12-12-1234 (A) (1) (ii) (a); the CDR code would have only four digits, 0111. (This example is not an actual statute or CDR code.)
>
> The existence or non-existence of a CDR code does not affect the existence of a crime or its elements. Any errors in a CDR code do not affect the crime, its characterization as violent or non-violent, for example, or even if someone can be prosecuted for a crime. The Code of Laws of South Carolina and law as developed by the courts are the only governing authorities in criminal law.

(http://www.sccourts.org/cdr/userInstructions.cfm#FAQ.)

19

> 426, 272 S.E.2d 431 (1980). Furthermore, the statute does not
> mandate a reverse inference or presumption for amounts less
> than one gram.

*State v. Robinson*, 344 S.C. 220, 543 S.E.2d 249 (S.C. App. 2001.)   Because the petitioner's claim, when pared down to its core, rests solely upon an interpretation of South Carolina statutes, it is simply not cognizable on federal habeas review. *See Smith v. Moore,* 137 F.3d 808, 822 (4th Cir.1998)(refusing to entertain claim that jury instruction misstated South Carolina law).  Claims involving the application and interpretation of a state statute and state court rules are not cognizable in federal habeas actions. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (holding "[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.").

Furthermore, there is no issue regarding the petitioner's sentence.  The petitioner asserts that the maximum sentence that he could have received was fifteen years. Again, however, he cites § 44-53-375(A) in support of his argument and, as discussed above, the petitioner was convicted under § 44- 53-375(B) for possession of crack cocaine with intent to distribute. Therefore, the petitioner  was properly sentenced under § 44-53-375(B).

Based upon the foregoing, this issue is without merit.  Therefore, Ground Three should also be summarily dismissed.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#12) be GRANTED; the Petitioner's Motions for Summary Judgment (#16) and for an Immediate Trial (#18) be DENIED; and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

20

October 27, 2008
Greenville, South Carolina


**The petitioner's attention is directed to the important notice below**



.


**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).